DURIE TANGRI LLP
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:   415-236-6300

ELECTRONIC FRONTIER FOUNDATION
CORYNNE MCSHERRY (SBN 221504)
corynne@eff.org
DANIEL NAZER (SBN 257380)
daniel@eff.org
815 Eddy Street
San Francisco, CA 94109
Telephone:  415-436-9333

Attorneys for Defendant
HAPPY MUTANTS, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PLAYBOY ENTERTAINMENT GROUP INC., a Delaware Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>HAPPY MUTANTS, LLC, a Delaware limited liability company, and DOES 1 through 10,<br><br>                    Defendants. | Case No. 2:17-cv-08140 FMO (PLA)<br><br>**DEFENDANT HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF PLAYBOY ENTERTAINMENT GROUP INC.'S FIRST AMENDED COMPLAINT**<br><br>Date:  February 15, 2018<br>Time: 10:00 a.m.<br>Ctrm: 6D, W. 1st Street Courthouse<br>Judge: Honorable Fernando M. Olguin |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND................................................................ 2

III.  LEGAL STANDARD ......................................................................... 2

IV.   ARGUMENT....................................................................................... 3

      A.    The FAC does not allege facts that could support a claim for direct
            copyright infringement against Boing Boing. ................................... 3

      B.    The FAC fails to state a claim for contributory copyright infringement. ....... 5

            1.    The FAC does not allege that Boing Boing aided or induced
                  third parties to upload the photos to Imgur and YouTube.................. 5

                  a.    Material Contribution .................................................. 6

                  b.    Inducement ................................................................ 6

            2.    Imgur and YouTube are not alleged to have engaged in any
                  volitional act and are therefore not direct infringers. .......................... 7

            3.    Individual BoingBoing readers who clicked on the link to view
                  the Imgur gallery or the YouTube video did not engage in any
                  acts of infringement, and the FAC does not allege that any of
                  them downloaded the images................................................. 8

      C.    Even if there was an act falling within Playboy's exclusive rights,
            Boing Boing's reporting was a noninfringing fair use................................ 11

            1.    The Purpose and Character of the Use................................. 12

            2.    The Nature of the Copyrighted Work ................................... 13

            3.    The Amount and Substantiality of the Portion Used ........................ 13

            4.    Effect on the Value of or Market for the Copyrighted Work ............. 14

V.    CONCLUSION................................................................................... 15

i

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 2, 3

*Bernstein v. JC Penney, Inc.*,
No. 98-2958 R EX, 1998 WL 906644 (C.D. Cal. Sept. 29, 1998) ................... 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) .......................................................... 14

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006) .......................................................... 13

*Borkman v. BMW of N. Am., LLC*,
No. CV 16-2225 FMO, 2017 WL 4082420 (C.D. Cal. Aug. 28, 2017) .......... 3

*Borsotti v. Bray*,
No. CV 16-7603 FMO, 2017 WL 2375705 (C.D. Cal. May 31, 2017) .......... 3

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .......................................................... 12

*Burnett v. Twentieth Century Fox Film Corp.*,
491 F. Supp. 2d 962 (C.D. Cal. 2007) .......................................................... 12

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
852 F.3d 436 (5th Cir.), *cert. denied*, 138 S. Ct. 236 (2017) ...................... 7, 9

*Calkins v. Playboy Enterprises International, Inc.*,
561 F. Supp. 2d 1136 (E.D. Cal. 2008) .................................................. 12, 13

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......................................................... 12

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004) ........................................................................ 3

*City of Inglewood v. Teixeira*,
   No. CV-15-01815-MWF, 2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) ................... 12

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ..................................................................... 6

*CoStar Grp., Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ...................................................................... 8

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003)................................................................................. 15

*Flava Works, Inc. v. Clavio*,
   No. 11 C 05100, 2012 WL 2459146 (N.D. Ill. June 27, 2012) ............................ 9

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) ................................................................... 8, 9

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) ..................................................................... 3

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ..................................................................... 13

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ..................................................................... 11

*Los Angeles News Serv. v. CBS Broad., Inc.*,
   305 F.3d 924, *as amended*, 313 F.3d 1093 (9th Cir. 2002).......................... 12

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)............................................................................. 6, 11

*Núñez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000)....................................................................... 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ........................................................... 4, 5, 8, 9

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) .................. 4, 7, 8

iii

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ......................................................................... 10

*Perfect 10, Inc. v. Yandex N.V.*,
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) ......................................................... 10

*Shepard v. Miler*,
   No. CIV. 2:10-1863 WBS JFM, 2010 WL 5205108 (E.D. Cal. Dec. 15,
   2010) ............................................................................................................... 12

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ....................................................................................... 11

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014) ............................................................................ 13

*Tarantino v. Gawker Media, LLC*,
   No. CV 14-603-JFW, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ...................... 9, 10

**Statutes**

17 U.S.C. § 106 ...................................................................................................... 4

17 U.S.C. § 107 ........................................................................................... 11, 12, 13

17 U.S.C. § 512(c)(3) ............................................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 12

L.R. 7-3 ................................................................................................................... 4

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

# I. INTRODUCTION

This lawsuit is frankly mystifying.  Playboy's theory of liability seems to be that it is illegal to link to material posted by others on the web—an act performed daily by hundreds of millions of users of Facebook and Twitter, and by journalists like the ones in Playboy's crosshairs here.

Defendant Happy Mutants, LLC ("Happy Mutants") is the corporation behind Boing Boing, a blog created and written by five people to share "mostly wonderful things."  For three decades, Boing Boing has reported on social, educational, political, scientific, and artistic developments in popular culture, becoming one of the Internet's leading sources of news and commentary.  Plaintiff Playboy Entertainment Group Inc. ("Playboy"), an entertainment behemoth with a notable history of defending freedom of the press, is suing this much smaller but important news site for reporting on the existence of a collection of Playboy centerfolds and linking to that collection.  In other words, rather than pursuing the individual who created the allegedly infringing archive, Playboy is pursuing a news site for pointing out the archive's value as a historical document.

The facts pleaded in Playboy's First Amended Complaint ("FAC") do not state a claim for either direct or contributory copyright infringement.  With respect to direct infringement, Playboy alleges that third parties—not Boing Boing—posted the collection at issue, and that Boing Boing made reference to that collection with a hyperlink.  As for secondary liability, Playboy does not allege facts that could show that Boing Boing induced or materially contributed to direct infringement by any third party.  Playboy's claim fails for these reasons alone.

What is more, Playboy's own allegations show that further amendment would be futile.  Boing Boing's post is a noninfringing fair use, made for the favored and transformative purposes of news reporting, criticism, and commentary so that the reader can, in the words of the post in question, "see how our standards of hotness, and the art of commercial erotic photography, have changed over time."  FAC ¶ 14.

The Court should dismiss Playboy's First Amended Complaint with prejudice.

1

## II.   FACTUAL BACKGROUND

Boing Boing is an Internet-based news site owned by Happy Mutants.  Playboy alleges that a "third party," not Boing Boing, "made unauthorized copies of [Playboy's] Centerfolds and then, without PLAYBOY's consent, uploaded scans of each of the Centerfolds to the website imgur.com."  FAC ¶ 9.  The FAC makes no allegation that Boing Boing played any role in that act.  Rather, the FAC arises entirely out of a subsequent post published on the Boing Boing blog.  *Id.* ¶ 14.

The FAC alleges that nearly two years ago, on February 29, 2016, Boing Boing published a post "featuring and promoting said unauthorized reproductions and touting the availability of 'Every Playboy Playmate Centerfold Ever' for viewing or download."  *Id.* The text of the blog post, as reproduced in the FAC, is as follows:

> Some wonderful person uploaded scans of every Playboy
> Playmate centerfold to imgur. It's an amazing collection,
> whether your interests are prurient or lofty. Kind of amazing to
> see how our standards of hotness, and the art of commercial
> erotic photography, have changed over time.

FAC ¶ 14.  The blog post then contains two links.  One, which has the text "Every Playboy Playmate Centerfold," is a link to an album on the Imgur photo posting site, located at http://imgur.com/a/Uxug4.  The second is a link to "a video that contains all 746 of these incredible shots, created by YouTuber Ryan Powers," located at https://www.youtube.com/channel/UCpLZHtj-diLM5uLWuq4tLQg.  The FAC does not allege that Boing Boing posted the images in question on Imgur or on YouTube (and indeed there would be no basis for such an allegation).  Nor does the FAC allege that those images are currently available on those sites (they are not, and have not been for some time).

## III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

1  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

2  (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

3  allows the court to draw the reasonable inference that the defendant is liable for the

4  misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The plaintiff must provide "more than

5  labels and conclusions, and a formulaic recitation of the elements of a cause of action will

6  not do."  *Twombly*, 550 U.S. at 555.  "[T]he court is not required to accept legal

7  conclusions cast in the form of factual allegations if those conclusions cannot reasonably

8  be drawn from the facts alleged."  *Borkman v. BMW of N. Am., LLC*, No. CV 16-2225

9  FMO (MRWx), 2017 WL 4082420, at *3 (C.D. Cal. Aug. 28, 2017) (quoting *Clegg v.*

10  *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)).

11  Nor is the court required to accept as true allegations that are "merely conclusory,

12  unwarranted deductions of fact, or unreasonable inferences."  *Cholla Ready Mix, Inc. v.*

13  *Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (internal quotation marks omitted) (citations

14  omitted); *see also Borsotti v. Bray*, No. CV 16-7603 FMO (JCx), 2017 WL 2375705, at

15  *1 (C.D. Cal. May 31, 2017).  And courts are "not required to accept as true conclusory

16  allegations which are contradicted by documents referred to in the complaint."  *Gonzalez*

17  *v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citation

18  omitted).  This is especially relevant here, where the content of the blog post at issue is

19  included in the FAC and is not subject to any dispute.  The court can therefore evaluate

20  this motion based on the actual text of the post, rather than paraphrases and descriptions.

21  **IV.  ARGUMENT**

22  **A.  The FAC does not allege facts that could support a claim for direct**
   **copyright infringement against Boing Boing.**

23

24  Playboy's FAC includes a single claim for copyright infringement.  This claim

25  appears to be intended primarily to allege contributory, rather than direct, infringement.

26  *See* FAC ¶¶ 18-19.  But the FAC does not limit its claim to secondary liability.  *See id.* ¶

27  20 (alleging that Playboy suffered damages caused by Defendants' "acts of infringement,

28

*including* contributory infringement") (emphasis added).[1]

Playboy fails to state a claim for direct copyright infringement because it does not allege that Boing Boing itself copied or displayed any of the works listed in Exhibit A to the FAC. *See* ECF No. 15-1. "To establish a prima facie case of direct infringement, a plaintiff must show ownership of the allegedly infringed material and demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) (internal quotation marks omitted). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Id.*

Playboy alleges only that Boing Boing commented upon and linked to a third-party website containing Playboy's images. The Ninth Circuit resolved this question a decade ago, squarely holding that linking cannot constitute direct copyright infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007). In that case, an image-search service linked to full-size photographs located on third-party servers not operated by the defendant. The defendant's "computers [did] not store the photographic images" in question, but instead provided links "that direct[ed] a user's browser to a website publisher's computer that store[d] the full-size photographic image." *Id.* at 1160-61. Because the defendant's computer never transmitted a full-size photographic image it had stored, the Ninth Circuit held that the defendant could not be a direct infringer. *Id.* at 1161.

The facts alleged in the FAC are the same: Playboy alleges that Boing Boing

---

[1] When counsel conferred regarding this Motion pursuant to L.R. 7-3, Playboy's counsel acknowledged that the FAC does not plead facts supporting a claim for direct infringement against Boing Boing, because the FAC alleges that third parties, not Boing Boing, posted the material in question. The FAC, however, implies that Playboy is proceeding on the same theory as to all "defendants," FAC ¶ 20, and Playboy has declined to amend the FAC to identify the theory of liability on which it is pursuing Boing Boing. Accordingly, Boing Boing is forced to address direct liability in this Motion.

linked to the images on the third-party Imgur and YouTube websites. It does not allege that Boing Boing stored the images in question. *See* FAC ¶¶ 9, 14.[2] As a matter of law, such linking is not direct copyright infringement, and allegations that relate to linking do not state a claim for direct copyright infringement.

Accordingly, the FAC does not support a claim of copyright infringement against Boing Boing on a theory of direct infringement.

**B.     The FAC fails to state a claim for contributory copyright infringement.**

Since "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party," *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), Playboy must allege at least one underlying act of direct infringement *and* an act by Boing Boing that materially contributed to or induced that infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1171. The FAC does neither. The FAC does not say who the alleged direct infringer is, or on what theory Boing Boing is alleged to have aided that infringer in engaging in the infringing activity. This problem cannot be fixed: as a matter of law, there is no theory on which Boing Boing could be liable as a contributory infringer.

**1.     The FAC does not allege that Boing Boing aided or induced third parties to upload the photos to Imgur and YouTube.**

One possible theory on which Plaintiff may be proceeding is that the direct infringers in question are the individual or individuals[3] who uploaded the photos in

---

[2] The Boing Boing blog post itself includes, as a header image, a partial reproduction of the centerfold of Miss February 1954. FAC ¶ 14. The FAC does not make any allegations with respect to that image, and Playboy does not include Miss February 1954 in the list of images to which it claims ownership. ECF No. 15-1. And rightly so: the February 1954 issue of Playboy entered the public domain in 1981, when Playboy did not renew its copyright registration.

[3] The FAC does not specify whether one individual uploaded the images to Imgur and the video containing the images to YouTube, referring only to the uploader as "a third party." FAC ¶¶ 9-10. For simplicity, we refer to the uploader in the singular.

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

question to Imgur and YouTube.  Even assuming *arguendo* that those uploads constituted direct infringement, that would not support a claim for contributory infringement against Boing Boing, because—as the FAC alleges—Boing Boing posted only *after* that third party completed the uploading, and therefore completed the alleged infringement.  As discussed below, that allegation precludes contributory liability on either a material-contribution theory or an inducement theory.

### a.   Material Contribution

Playboy alleges that "[b]y undertaking substantial promotional efforts to encourage visits to the infringing material, MUTANT materially contributed to the infringing conduct."  FAC ¶ 16.  Even taking this allegation as true, it does not suggest that Boing Boing made any contribution **to anything the uploader did**.  By the time any alleged promotional efforts commenced, the uploader's activities had concluded.  Indeed, there is no allegation that Boing Boing had any involvement whatsoever until **after** the materials had already been posted.  Thus, based on the FAC itself, it is clear that Boing Boing did not materially contribute to the uploader's allegedly infringing acts.

### b.   Inducement

Playboy also mentions "copyright infringement under the 'inducement' theory of liability."  FAC ¶ 19.  On this theory, "'one who distributes a device with the object of promoting its use to infringe copyright, *as shown by clear expression or other affirmative steps taken to foster infringement*, is liable for the resulting acts of infringement by third parties.'"  *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (emphasis added).  This theory of liability "has four elements:  (1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, *and* (4) causation."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (emphasis added).

Playboy does not and cannot show the fourth element:  causation with respect to acts of direct infringement by the uploader.  Playboy simply alleges that "Defendants clearly expressed their intention to promote the infringement of PLAYBOY's copyrights,

6

as evidenced by their affirmative communication of praise for the 'wonderful person' who made the Centerfolds freely available on Imgur, and the public acknowledgement of the YouTuber who created the infringing video."  FAC ¶ 19.  But even taking these allegations as true, praise that comes **after the fact** cannot cause an **earlier** act of direct infringement.  Thus, even if the third parties who uploaded the allegedly infringing materials to Imgur and YouTube engaged in direct infringement by doing so, those acts cannot be "resulting acts of infringement" based on anything Boing Boing did.

### 2. Imgur and YouTube are not alleged to have engaged in any volitional act and are therefore not direct infringers.

Another theory on which Playboy may be proceeding is that the direct infringers in question are Imgur and YouTube themselves—the intermediaries to whom third parties uploaded the images and the video.  The FAC alleges that there were "infringing materials on imgur and YouTube" that were "available for download and/or viewing," FAC ¶ 19, but does not allege that Imgur or YouTube undertook any volitional acts with respect to those materials, as opposed to merely operating automated systems to which an unknown third party uploaded allegedly infringing materials.

In order to plausibly allege that a hosting intermediary like Imgur or YouTube has engaged in an act of direct copyright infringement that could serve as the basis for a claim of contributory copyright infringement, the law "requires the plaintiff to show causation (also referred to as 'volitional conduct') by" the accused direct infringer.  *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d at 666.  In other words, "*direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement."  *Id.* (quoting opinion below with approval).  In *Giganews*, for example, the Ninth Circuit ruled that "passively storing material at the direction of users in order to make that material available to other users upon request, or automatically copying, storing, and transmitting materials upon instigation by others," did not involve any act by the service provider that could support a claim for direct infringement.  847 F.3d at 668 (internal quotation marks omitted) (citation omitted).  Similarly, in *BWP Media USA, Inc. v. T & S Software*

7

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

*Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir.), *cert. denied*, 138 S. Ct. 236 (2017), the Fifth Circuit held that where a party accused of direct infringement "hosts the forum on which infringing content was posted, but its connection to the infringement ends there," that party has not engaged in direct infringement because that claim of direct infringement does not meet the volitional-conduct requirement.  *See also*, *e.g.*, *CoStar Grp., Inc. v. LoopNet, Inc*., 373 F.3d 544, 551 (4th Cir. 2004) (holding that web host had not engaged in direct copyright infringement by operating an automated hosting system to which third parties uploaded infringing materials).

None of the allegations of the FAC suggest that the hosting providers' role in this case differs in any way from the role of the hosting providers in *Giganews*, *T&S*, or *CoStar*.  For that reason, the FAC does not plausibly allege that Imgur or YouTube engaged in direct copyright infringement, and the FAC cannot state a claim for contributory infringement premised upon any direct infringement by Imgur or YouTube.  Without volition, Imgur and YouTube cannot be direct infringers, and engaged in no act of direct infringement for Boing Boing to contribute to.

> **3.    Individual BoingBoing readers who clicked on the link to view the Imgur gallery or the YouTube video did not engage in any acts of infringement, and the FAC does not allege that any of them downloaded the images.**

The final possible theory on which Playboy may be proceeding is that the direct infringers in question are Boing Boing readers who clicked on the links to the Imgur album or the YouTube video.  But that final theory does not work either.  Clicking on a link to view material on the Internet is not direct infringement, and there is no allegation that any Boing Boing reader downloaded, rather than simply viewing, the allegedly infringing materials.

It is well-established that controlling the viewing of copyrighted material is not within the exclusive rights of the copyright holder.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1169; *see also Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757-58 (7th Cir. 2012).  Indeed, courts have been rejecting secondary liability claims founded on the

alleged viewing of linked-to material for almost twenty years.  *See Bernstein v. JC Penney, Inc.*, No. 98-2958 R EX, 1998 WL 906644, at *1 (C.D. Cal. Sept. 29, 1998).  To the extent users' computers created temporary copies while browsing, the creation of cached or local copies during Internet browsing is a non-infringing fair use, as a matter of law.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1169-70.  Internet users could only commit an act of direct copyright infringement if, once they have visited or viewed the linked-to content, they take the **further** step of downloading a copy of the material.  *See Flava Works, Inc.*, 689 F.3d at 757-58 ("unless those visitors copy the videos they are viewing on the infringers' websites, [the defendant] isn't increasing the amount of infringement.").  The FAC does not allege that any reader did so.

Playboy's copyright claim is strikingly similar to a claim recently rejected in *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW (FFMx), 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014).  In that case, director Quentin Tarantino sued the blog Gawker after it published an article that linked to a copy of the script to the then-unproduced movie The Hateful Eight.  *See id.* at *2.  Tarantino alleged that Gawker "contributorily infringed Plaintiff's screenplay by including links to where the screenplay was posted online in its reporting on the leak of the screenplay."  *Id.*  Noting that simply viewing material is not copyright infringement, the court dismissed the secondary liability claim for lack of an underlying act of direct infringement.  *See id.* at **4-5.

Like the Plaintiff in *Tarantino*, Playboy alleges that Boing Boing reported on the availability of, and linked to, allegedly infringing content but does not allege that any Boing Boing user in fact downloaded—rather than simply viewing—the material in question.  *See* FAC ¶ 10.  Absent any identifiable underlying act of direct infringement, Playboy's secondary infringement claim must be dismissed.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1169; *see also BWP Media USA, Inc.*, 2014 WL 12596429, at *3 (dismissing contributory infringement claim where plaintiff failed to allege specific instance of third-party infringement); *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *3 (N.D. Ill. June 27, 2012) (same).

1   Playboy may argue that Playboy can amend the Complaint to allege that some

2   readers must have taken the further step of actually downloading copies of infringing

3   material.  That would not save the Complaint from dismissal, for two reasons.

4   First, it would be pure speculation.  *See Tarantino*, 2014 WL 2434647, at *4

5   (Tarantino "speculates that some direct infringement must have taken place [but] fails to

6   allege the identity of a single third-party infringer, the date, the time, or the details of a

7   single instance of third-party infringement"); *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp.

8   2d 1146, 1159 (N.D. Cal. 2013) (dismissing plaintiff's speculation that, given volume of

9   traffic, at least some U.S. users must have used Russian search index to download

10   infringing images).

11   Second, even a non-speculative allegation that some Boing Boing visitor read the

12   Boing Boing article in question, clicked on the link in the article, visited the Imgur album

13   web page, *and then* took steps to download images contained on that web page would not

14   support a claim for contributory infringement against Boing Boing.  The act of

15   downloading is one step removed from anything Boing Boing did:  at most, Boing Boing

16   made it easier for its readers to view the images in the Imgur album, which in turn gave

17   those readers the opportunity to decide to take further steps to download an image, which

18   decision may in turn have resulted in those readers engaging in an act of alleged direct

19   infringement.  Where "there is an additional step in the causal chain" between the activity

20   being facilitated by the defendant and an act of direct infringement, the Ninth Circuit has

21   held that there is no material contribution to infringement and therefore no contributory

22   liability.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007) (no

23   contributory liability where "Defendants make it easier for infringement to be *profitable*,

24   which tends to increase financial incentives to infringe, which in turn tends to increase

25   infringement.").  And there is no allegation that anything in the Boing Boing blog post

26   was directed to intentionally inducing any reader to click on the link to view the images

27   *and then* take further steps to download those images.

28   Finally, even if some Boing Boing reader downloaded the images in question, and

1   if that downloading constituted direct infringement, and if Boing Boing's article was

2   regarded as making a material contribution to that direct infringement, the contributory-

3   infringement claim would *still* fail because the link would then have both infringing uses

4   and substantial non-infringing uses.  Even if a party knows a device—here, the hyperlink

5   to the Imgur album—could be used for infringing purposes, they cannot be held

6   contributorily liable if the device is also "capable of substantial noninfringing uses."  *Sony*

7   *Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984).  This doctrine

8   "limits liability to instances of more acute fault than the mere understanding that some of

9   one's products will be misused," *Metro–Goldwyn–Mayer Studios Inc*., 545 U.S. at 932-

10  33.  Here, while it is possible that some visitors used the "device" in question for an

11  infringing rather than a noninfringing purpose, the text of the blog post makes clear that

12  the intended purpose of the link was a noninfringing one:  to view the album in order to

13  analyze "how our standards of hotness, and the art of commercial erotic photography,

14  have changed over time."  FAC ¶ 14.

15      Accordingly, the FAC does not state a claim for contributory copyright

16  infringement, and amendment would be futile because the facts pleaded in the FAC rule

17  out such infringement.  Nor could Playboy allege inducement of unknown third parties.

18  There is simply no indication that Boing Boing intended to encourage its readers to

19  download these files rather than view them.

20      **C.      Even if there was an act falling within Playboy's exclusive rights, Boing**
        **Boing's reporting was a noninfringing fair use.**

21

22      Even if Playboy could state a claim for direct or secondary infringement against

23  Boing Boing, the Court should still dismiss that claim because Boing Boing's reporting

24  and commentary falls squarely within the protections of copyright's fair use doctrine.  *See*

25  17 U.S.C. § 107 ("the fair use of a copyrighted work, . . . for purposes such as criticism,

26  comment, [or] news reporting, . . . is not an infringement of copyright.").

27      Although fair use generally is a mixed question of fact and law, an "assertion of fair

28  use may be considered on a motion to dismiss."  *Leadsinger, Inc. v. BMG Music Publ'g*,

11

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA

512 F.3d 522, 530 (9th Cir. 2008); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *City of Inglewood v. Teixeira*, No. CV-15-01815-MWF (MRWx), 2015 WL 5025839, at **6-12 (C.D. Cal. Aug. 20, 2015) (finding fair use on a Rule 12(b)(6) motion); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972 (C.D. Cal. 2007) (same); *Shepard v. Miler*, No. CIV. 2:10-1863 WBS JFM, 2010 WL 5205108, at *3 (E.D. Cal. Dec. 15, 2010) (same).  The four statutory factors support a finding of fair use here.  *See* 17 U.S.C. § 107(1)-(4).

The Copyright Act sets forth four nonexclusive factors to guide the fair-use determination: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  We discuss each factor in turn.

### 1.    The Purpose and Character of the Use

Factor One supports a finding of fair use because Boing Boing's use was for the classic fair use purposes of commentary and reporting.  *See Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 940, *as amended*, 313 F.3d 1093 (9th Cir. 2002).  In *Calkins v. Playboy Enterprises International, Inc.*, 561 F. Supp. 2d 1136, 1141 (E.D. Cal. 2008), the court found Playboy's publication of a high school photo to be transformative because its use "served an entirely different function than the original image."  In this case, Boing Boing's use was also entirely different from the original images.  The Boing Boing post included links to support its cultural commentary—specifically, that the images showed "how our standards of hotness, and the art of commercial erotic photography, have changed over time."  FAC ¶ 14.

Boing Boing's reliance on advertising does not change the analysis; many fair uses are commercial.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (rejecting the proposition that all commercial uses are presumptively unfair because it would "swallow nearly all of the illustrative uses listed in the preamble paragraph of

§ 107"). The fact that a defendant's purpose was transformative—such as Boing Boing's purpose of commentary and reporting—reduces "the significance of other factors that weigh against fair use, such as use of a commercial nature," in the analysis. *Calkins*, 561 F. Supp. 2d at 1141 (citing *Campbell*, 510 U.S. at 579); *see also Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 82 (2d Cir. 2014) (noting that any commercial use is "attenuated" when the transformative purpose is reporting).

In *Calkins*, for example, the court noted that the photograph at issue "was used for a commercial purpose inasmuch as PEI is a for-profit enterprise and the Photograph appeared in Playboy." 561 F. Supp. 2d at 1141. The court reasoned that the "commercial" aspect of the use "was incidental and less exploitative in nature than more traditional types of commercial use insofar as PEI was neither using the Photograph to directly promote sales of Playboy, nor trying to profit by selling the Photograph." *Id.* Likewise, Boing Boing was not trying to profit by selling the copyrighted works but simply linked to them in its reporting. Indeed, any commercial use by Boing Boing was more attenuated and incidental than Playboy's use in *Calkins*: in that case, Playboy sold magazines that included the relevant photograph while Boing Boing never even hosted the copyrighted works on its servers, much less charged money to access the works.

## 2. The Nature of the Copyrighted Work

Factor Two weighs slightly in favor of fair use or is neutral. Although the works at issue are creative, "the second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose." *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006) (citation omitted). Moreover, the photographs at issue were previously published, and use of published works is "more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003).

## 3. The Amount and Substantiality of the Portion Used

Factor Three weighs in favor of fair use. Although the entirety of Playboy works appeared on external sites, Boing Boing itself made no use at all of any portion of the

13

works because it simply linked to those sites as part of its commentary and reporting.  To the extent the amount displayed on a third-party website to a user who clicked the link is relevant, the entirety of each of the photographs in question could be viewed.  But the use of the entirety of a work does not weigh against fair use where the use of the entirety serves a transformative purpose, such as criticism, commentary, or news reporting.  *See, e.g.*, *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) ("copying the entirety of a work is sometimes necessary to make a fair use of the image."); *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (finding fair use where the defendant "admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story.").  Seeing the photos in their entirety and in their full chronological sequence serves the transformative purpose of observing and analyzing "how our standards of hotness, and the art of commercial erotic photography, have changed over time."  FAC ¶ 14.

### 4.    Effect on the Value of or Market for the Copyrighted Work

Factor Four also weighs in Boing Boing's favor.  Boing Boing's use did not harm the underlying market.  Boing Boing provided commentary and links but is not alleged to have uploaded or hosted the content, but merely linked to externally-hosted websites.  In the context of a news website reporting on the existence of that content on those websites, this use is highly transformative and does not supplant the market for the original works.  Importantly, Playboy has not, and could not, allege that Boing Boing did anything to make it more difficult for Playboy to act against the actual uploaders and hosts of the infringing content.  If Playboy wished to send Digital Millennium Copyright Act ("DMCA") takedown notices to YouTube or Imgur, it was free to do so.[4]  Similarly,

---

[4] Indeed, it appears that Playboy did so.  The DMCA allows copyright holders to send notices requesting that service providers remove infringing content.  *See* 17 U.S.C. § 512(c)(3).  The allegedly infringing materials no longer appear to be available on YouTube or Imgur.  *See* https://www.youtube.com/watch?v=rrzltZUGlOc and https://imgur.com/a/Uxug.  In any event, Playboy has not alleged that Boing Boing frustrated or slowed the removal of the content in question once Playboy decided to

1 Playboy has not, and could not, allege that Boing Boing committed any act to discourage

2 YouTube or Imgur from honoring such takedown requests.

3      Taken together, the statutory factors compel a finding of fair use, providing

4 alternative ground for dismissal.  To conclude otherwise would mean that no journalist

5 could report on a pending copyright case by linking to the material at issue in the case for

6 fear that link would itself be infringing.  That would defeat the purpose of fair use, which

7 is a bulwark that protects copyright from encroaching on the First Amendment.  *Eldred v.*

8 *Ashcroft*, 537 U.S. 186, 219 (2003).

9 **V.   CONCLUSION**

10      When a journalist links to a page on the web and comments on the way that page

11 sheds light on artistic and cultural issues, the journalist should not fear copyright

12 infringement liability—and should not fear the costs of protracted copyright litigation.

13 That is why, as a matter of law as described above, the linking at issue in this case does

14 not give rise to copyright liability for the journalist engaged in that linking.  All of the

15 facts that the Court needs to dismiss the claim are pleaded in the FAC—most

16 significantly, the text of the article in question.  Boing Boing did nothing different than

17 any other journalistic organization on the web, and, as a matter of law, what Boing Boing

18 did in linking to publicly available material of cultural note is not copyright infringement.

19 The FAC should be dismissed with prejudice.

20

21 Dated:  January 18, 2018                    DURIE TANGRI LLP

22

23                                        By:  _____
                                                    */s/ Joseph C. Gratz*
                                              JOSEPH C. GRATZ

24

25                                         Attorneys for Defendant
                                           HAPPY MUTANTS, LLC

26 _____

27 request its removal—nor, indeed, that Playboy ever sent any notice, let alone a DMCA

28 takedown notice, to Boing Boing prior to filing suit.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

/s/ Joseph C. Gratz
JOSEPH C. GRATZ

HAPPY MUTANTS LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:17-CV-08140-FMO-PLA