1 Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
2 Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
3 Howard S. Han (SBN 243406)
4 hhan@donigerlawfirm.com
DONIGER / BURROUGHS
5 603 Rose Avenue
6 Venice, California 90291
Telephone: (310) 590-1820
7 Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAYBOY ENTERTAINMENT GROUP, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>HAPPY MUTANTS, LLC, a Delaware limited liability company; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:17-cv-08140-FMO-PLA<br>*Hon. Fernando M. Olguin Presiding*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: February 15, 2018<br>Time: 10:00 a.m.<br>Location: Courtroom 6D – 1st Street |

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………..1

II.    ARGUMENT…………………………………………………………………..2

    A.    Factual Background……………………………………….………….2

    B.    Legal Standard…………………………………………………………..3

    C.    Playboy's single claim for copyright infringement is well pled………...4

        1.    Playboy has properly pled a claim for infringement by material contribution……………………...…………………4

        2.    Playboy has properly pled a claim for infringement through inducement…………………………………………...7

        3.    Playboy need not plead that Happy Mutants's conduct led to further infringement…………………………………….8

    D.    Boing Boing's fair use claims cannot defeat Playboy's Infringement claim at the pleading stage……………………………………..12

    E.    In the event Playboy's claims are deemed deficient, leave to amend should be granted. In the alternative, dismissal should be without prejudice and as to Happy Mutant only……………….....14

III.    THE MOTION MUST BE DENIED……………………………………….16

# **TABLE OF AUTHORITIES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)……………………….……………....3

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996)…………………..…..3

*Columbia Pictures Indus., Inc. v. Fung,* 710 F.3d 1020 (9th Cir. 2013)……………..9

*Flava Works, Inc. v. Gunter*, 689 F.3d (7th Cir. 2012) …………………….……10, 11

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
      443 F.2d 1159 (2d Cir.1971)………………………………………………....4

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980)…………………………………15

*Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986).....................................3

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522 (9th Cir. 2008)……………...13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
      545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ……………...*passim*

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)………...14

*Perfect 10, Inc. v. Amazon.com, Inc. et al.*, 508 F.3d 1146 (9th Cir. 2007)…….*passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)………………5

*Perfect 10, Inc. v. Giganews, Inc.*,
      847 F.3d 657 (9th Cir. 2017) *cert. denied*, 138 S. Ct. 504……………………..6

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984)………… ……………………....12

*Sony Corp. of America* v. *Universal City Studios, Inc.,* 464 U. S. 417 (1984)…..........7

## I. INTRODUCTION

In 2007 the Ninth Circuit decided *Perfect 10, Inc. v. Amazon.com, Inc. et al.*, 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*"), a case about nothing more and nothing less than "a copyright owner's efforts to stop [Google's] search engine from facilitating access to infringing images." *Id.* There was no assertion in that case that Google had in any way caused or facilitated the posting of the infringing images, or that it had done anything more than link users to those infringing images. In a well-reasoned opinion that has remained the law of at least this Circuit since, the Court held that "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps." 508 F.3d at 1172.[1]

Despite the above authority, Happy Mutants, LLC ("Happy Mutants") apparently believes that it cannot be held liable under copyright law for actively promoting infringing content despite (1) having every reason to know that it was linking to infringing content, (2) having been able to take simple measures to prevent further damage to Playboy's copyrighted works, and (3) having failed to take any such steps. Happy Mutants is wrong.

This is an important case. At issue is whether clickbait sites like Happy Mutants' *Boing Boing* weblog—a site designed to attract viewers and encourage them to click on links in order to generate advertising revenue—can knowingly find, promote, and profit from infringing content with impunity. While such sites may be within their rights to profit from the creative efforts of others,[2] courts both

---

[1] Since factual disputes relevant to that determination had not been resolved by the district court, the case was remanded so the necessary findings could be made. *Id.*
[2] Clickbait sites like Boing Boing are not known for creating original content. Rather, their business model is based on "collecting" interesting content created by others. As

domestically and abroad[1] have made clear that knowingly linking to infringing materials is a different story. Nevertheless, Happy Mutant, supported by the Electronic Frontier Foundation,[2] is urging this Court to ignore that authority so that online sites are free to not only encourage, facilitate, and induce infringement, but to profit from those harmful activities.

Happy Mutants knowingly connected its website to third party sites loaded with unlawful copies of Playboy's works. Its only goal in doing so was to exploit and monetize the web traffic that over fifty years of Playboy photographs would generate. Given these facts, it is properly charged with liability for copyright infringement and this motion must be denied.

## II. ARGUMENT

### A. Factual Background

Playboy is a global brand built around a monthly magazine first published in 1953. It is world renowned for not only its excellent writing and humor, but for its female models and centerfolds who have reflected, if not been part of setting, the changing standards of beauty in American society. In addition to its monthly magazine, Playboy monetizes its historical archives of Playboy Playmate images

---

such, they effectively profit off the work of others without actually creating anything original themselves.

[1] On September 8, 2016 the Court of Justice of the European Union ("CJEU") issued what has been hailed as a "landmark ruling" in *GS Media BV v Sanoma Media Netherlands BV and Others* (C-160/15), holding that hyperlinking to infringing content may properly be found to be infringing where (1) it is done for financial gain and (2) the linking party knew or ought to have known that it was linking to infringing content. Thus, copyright protections in the EU effectively mirror the protections afforded under *Perfect 10, Inc. v. Amazon.com, Inc. et al.*

[2] On the same day this motion was filed, Happy Mutants associated in as counsel of record two attorneys from the Electronic Frontier Foundation, a Silicon Valley "digital rights" group with a history of funding and otherwise supporting litigants in their efforts to expand fair use and otherwise undermine copyright liability stemming from online activities.

through sales of other publications (including the book *Playboy: The Compete Centerfolds, 1953-2016*), DVDs and other recorded video formats, and on the subscription website PlayboyPlus.com. *See* FAC ¶ 17.

As alleged in the FAC, Happy Mutants operates the clickbait site Boing Boing, a commercial weblog that professes to be a "directory of wonderful things." The main purpose of Boing Boing's content is to attract attention and encourage visitors to click on links. By increasing views and clicks, Happy Mutant increases the advertising revenues it can receive and thus the profitability of its site. *See* FAC ¶¶ 11-13.

In February of 2016 the co-editor of Boing Boing posted a promotion for what was clearly an infringement of Playboy's copyrights. Specifically, the post linked to an Imgur (www.imgur.com) page in which "[some] wonderful person uploaded scans of every Playboy Playmate centerfold…" and also to a separate video on YouTube "that contains all 746 of these incredible shots." *See* FAC ¶¶ 14-15.

This action followed.

**B. Legal Standard**

Motions to dismiss for failure to state a claim are disfavored and rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).[1] To survive such a motion, a complaint must contain merely a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required. *Id.* In deciding a motion to dismiss, all material allegations of the complaint are taken as true and all reasonable inferences are drawn in Plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

---

[1] This Court's Standing Order reiterates that bringing motions such as this are disfavored. "Rule 12(b)(6) motions are discouraged unless such motions will likely result in dismissal, without leave to amend, of all or at least some of the claims under applicable law." U.S.D.C. Dkt. No. 8, p. 3, para. 5(b).

### C. Playboy's single claim for copyright infringement is well pled.

Copyright infringement may be established through direct, vicarious, or contributory activity. With regard to contributory infringement, the Supreme Court has established the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914, 125 S. Ct. 2764, 2767, 162 L. Ed. 2d 781 (2005) ("*Grokster*") and has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts … or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses.'" *Id.* at 942 (Ginsburg, J., concurring).

In *Perfect 10* the Ninth Circuit made clear that this circuit has "adopted the general rule [that] one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer,'" *Perfect 10*, 508 F.3d at 1170 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)).

In *Perfect 10*, the plaintiff sought to hold Google liable for facilitated the finding of infringing third party content. The Ninth Circuit explained that under the *Gershwin Publishing* test "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps." *Perfect 10*, 508 F.3d at 1172.

1. <u>Playboy has properly pled a claim for infringement by material contribution.</u>

Playboy has properly pled a claim for copyright infringement under the *Gershwin Publishing* test. Specifically, it has alleged that Happy Mutants (1) had

knowledge that infringing Playboy images were available through the links it provided, (2) could take simple measures to prevent further damage to Playboy's copyrighted works, and (3) failed to take such steps.

Defendant argues that it cannot be liable for contributory infringement because:

> [T]here is no allegation that Boing Boing had any involvement whatsoever until after the materials had already been posted. Thus, based on the FAC itself, it is clear that Boing Boing did not materially contribute to the uploader's allegedly infringing acts.

(Dkt. 19-1, p. 11, at 6:12-15). But this argument is directly foreclosed by *Perfect 10* in which the Ninth Circuit specifically held that the operator of a website could be liable for linking to infringing content that had already been posted if it knew that it was linking to infringing content and failed to take reasonable steps to avoid the infringement.

Happy Mutant's reliance on *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 797 (9th Cir. 2007) ("*Visa*") is misplaced. In that case, the plaintiff sued financial institutions that process credit card payments directed toward allegedly infringing websites. But in holding that the credit card companies could not be held liable for infringement, the Ninth Circuit found that they did not materially contribute to the infringement because "the services provided by the credit card companies do not help locate and are not used to distribute the infringing images." *Id.* at 796.

Here, Happy Mutants expressly directed its viewers to two distinct locations (Imgur and YouTube) where they could locate the infringing Playboy images. Rather than affording Happy Mutants an avenue to escape liability for its infringing conduct, *Visa* suggests that actions that "help locate ... [and] distribute the infringing images" would indeed constitute infringement under the Ninth Circuit standard. Indeed, the

Ninth Circuit explicitly distinguished its holding in *Visa* from its holding in *Perfect 10,*[1] explaining:

> The salient distinction is that Google's search engine itself assists in the distribution of infringing content to Internet users, while Defendants' payment systems do not.
> The *Amazon.com* court noted that "Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials." Defendants do not provide such a service.

*Visa*, 494 F.3d at 797.

And one year ago the Ninth Circuit again confirmed that "[i]n the online context… a 'computer system operator' is liable under a material contribution theory of infringement 'if it has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 504 (affirming dismissal of contributory infringement claims re Usenet content offered through Giganews's servers because "there were no simple measures available that Giganews failed to take to remove Perfect 10's works from its servers").

Based on the foregoing, Playboy has properly pled that Happy Mutant materially contributed[2] to the infringement, and thus may be contributorily liable for that infringement. Therefore, this motion should be denied.

---

[1] Specifically, that "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps." *Perfect 10*, 487 F.3d at 729.

[2] As discussed more fully below, "materially contributing" to an infringement is not the same thing as causing it and an existing infringement can subsequently be contributed to by linking, through which a company like Happy Mutants could then tie itself to the infringement.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

2.  <u>Playboy has properly pled a claim for infringement through inducement.</u>

In *Grokster* 545 U.S. 913, the Supreme Court applied the patent law concept of "inducement" to a claim of contributory infringement against a file-sharing program. The court found that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936-37.  The Supreme Court summarized the "inducement" rule as follows:

> In sum, where an article is good for nothing else but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe. Conversely, the doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one's products will be misused. It leaves breathing room for innovation and a vigorous commerce.

545 U.S. at 932-33 (internal citations and quotations omitted).

In this case, Happy Mutants' offending link—which does nothing more than support infringing content—is good for nothing but promoting infringement and there is no legitimate public interest in its unlicensed availability.

Happy Mutants' argument that intentionally promoting a link to infringing material cannot result in liability "because the link [to the infringement] would… have both infringing uses and substantial non-infringing uses" (Dkt. 19-1, p. 16, ln. 11:3) is baseless. There are no substantial non-infringing uses to the direct and intentional promotion of infringement.

Moreover, it is clear that even substantial non-infringing uses would not immunize Happy Mutants in this case. Although *Sony Corp. of America* v. *Universal City Studios, Inc.,* 464 U. S. 417 (1984) found that Sony could not be held liable for

infringement because its video tape recorders had substantial non-infringing uses, the *Grokster* decision held that the distributor of another such a product could be liable for infringement if there is evidence that the product is intended to encourage or support infringement. 545 U.S. at 934-35. The Supreme Court thus recognized that even where there are "substantial non-infringing uses," liability may result where the defendant is encouraging infringement. And Happy Mutants cannot reasonably dispute that it was encouraging infringement through its post celebrating the "wonderful" persons who posted every Playboy Playmate ever.

Happy Mutants appears to acknowledge that Playboy has sufficiently pled the first three elements for inducement liability.[1] But it argues that "Playboy does not and cannot show the fourth element: causation with respect to acts of direct infringement." (Dkt. 19-1, p. 11, lns. 24-25). Again, Defendant is wrong. Playboy has alleged that Defendant promoted "infringing materials on Imgur and YouTube" that were "available for download and/or viewing." FAC ¶ 19. To the extent Boing Boing's active promotion of those infringing materials let its viewers to access, view, and even download the infringing materials (in violation of Playboy's right to control the display and distribution of the Works), Happy Mutants caused,[2] and may be held liable for, that infringement.

///

---

[1] Under *Columbia Pictures Indus., Inc. v. Fung*, the four elements to establish copyright infringement liability under a theory of inducement are: (1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." 710 F.3d 1020, 1032 (9th Cir. 2013) (emphasis added).

[2] As discussed in the next section, "causation" does not mean causing further infringement. Rather, it refers to either inducing or encouraging further infringement (the second of which does not necessarily cause any new infringement, but may simply cause a manifestation of support or appreciation for an existing infringement).

    3. <u>Playboy need not plead that Happy Mutants's conduct led to further infringement.</u>

Notwithstanding Playboy's well-pled allegations, Happy Mutants argues that Playboy's case must be dismissed unless it can specifically identify Boing Boing users who "in fact downloaded—rather than simply viewing—the material in question." (Dkt. 19-1, p. 14, lns. 22-23). This argument is based on an erroneous interpretation of the controlling authority.

As noted above, the Supreme Court has held that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,* 545 U.S. 913, 914. The argument that contributory infringement only lies where the defendant's actions result in further infringement ignores the "or" and collapses "inducing" and "encouraging" into one thing when they are two distinct things—to "induce" is to call something forth or bring it into existence; to "encourage" is to give support or confidence." They are different words with different meanings.

When Happy Mutants glowingly celebrated the "wonderful" users who unlawfully posted Playboy's copyright-protected images, it may not have induced that infringement, but it certainly encouraged it. Happy Mutant cannot argue in good faith that when the Supreme Court wrote "intentionally inducing or encouraging direct infringement" it really only meant "inducing" direct infringement.

In arguing against giving due meaning to the words chosen by the Supreme Court, Happy Mutant returns to the *Perfect 10* case to argue that "Absent any identifiable underlying act of direct infringement, Playboy's secondary infringement claim must be dismissed. *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d at 1169" (Dkt. 19-1, p. 14, at 9:23-24). But Playboy has identified the underlying act of direct infringement—the unauthorized posting of Playboy's work on Imgur and YouTube by the third parties Happy Mutant subsequently celebrated and encouraged. *Perfect*

*10* simply does not stand for the proposition that the requisite underlying act of infringement must be acts that <u>followed</u> those of the alleged contributory infringer.

Happy Mutants has not explained how it can rely on *Perfect 10* in support of a legal position *which is directly contrary to the holding of that case*. If "intentionally inducing or encouraging direct infringement" requires showing a causal relationship to further infringements, then the Ninth Circuit's holding in *Perfect 10* was incorrect. As set forth above, when considering a claim against Google predicated on nothing more than linking to pre-existing infringing content, the Ninth Circuit confirmed that a company "can be held contributorily liable if it 'has actual knowledge that specific infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Perfect 10*, 508 F.3d at 1172 (citations omitted). This holding is simply inconsistent with Happy Mutant's claim that knowingly promoting and encouraging an already-existing infringement is insufficient by itself to establish contributory liability.

*Perfect 10* has been consistently held up over the past decade as the standard for establishing contributory infringement. And it makes clear that Playboy's infringement claim is properly pled.[1]

Happy Mutants also relies on *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012), a case in which the Seventh Circuit recognized that liability for inducing infringement under *Grokster* is "a form of contributory infringement… that emphasizes intent over consequences. *Id.* at 758-59. Thus, it held that if the offending myVidster platform "*invited* people to post copyrighted videos on the Internet

---

[1] Happy Mutant's motion relies heavily on district court cases which are inconsistent with the holding of *Perfect 10,* with *Tarantino v. Gawker Media LLC* (CV 14-603-JFW (2014 WL 2434647) being primary among them. However, as set forth in this opposition, those district court decisions and *Perfect 10* cannot both be correct. Of course, *Perfect 10* is the controlling authority to be followed in this case.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
10

without authorization or to bookmark them on its website, it would be liable for *inducing* infringement." *Id.* at 758 (emphasis in original). This holding does not help Happy Mutants.

Happy Mutants correctly cites *Flava Works* for the principle that "[i]nternet users could only commit an act of direct copyright infringement if, once they have visited or viewed the linked-to content, they take the further step of downloading a copy of the material." (Dkt. 19-1, p. 14, lns. 5-7). While it is true that its visitors do not commit an act of direct infringement by merely viewing the linked-to content, Happy Mutant then reaches the improper conclusion that *Flava Works* requires specific evidence of downloading by the Happy Mutant viewers. *Flava Works* says no such thing. To the contrary, it expressly found that the *invitation* to bookmark infringing materials on its website would constitute infringing inducement—without reference to whether any invitees actually accepted that invitation.[1] And that is precisely what Happy Mutant is guilty of—Boing Boing essentially bookmarked the infringing material in a weblog post and then invited its readers to enjoy that material by visiting Imgur and YouTube where they could view and download the infringement.

The *Flava Works* and *Perfect 10* decisions are, of course, further supported by *Grokster*, in which the Supreme Court quoted with approval the statement from Prosser and Keeton on Law of Torts 37 (5th ed. 1984) that "[t]here is a definite tendency to impose greater responsibility upon a defendant whose conduct was intended to do harm, or was morally wrong," (*Id.* at 936) and explained that "[t]he

---

[1] *Flava Works* discussion on this point is limited due to an important factual distinction from this case, in which Happy Mutant specifically invited its viewers to the infringing materials. As the Seventh Circuit noted, "inducing infringement was not a ground of the preliminary injunction issued by the district judge in this case and anyway there is no proof that myVidster has issued any such invitations." 689 F.3d at 759.

inducement rule… premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise." *Id.* at 937.

While Happy Mutants desperately notes that some courts have rejected secondary liability claims founded solely on the alleged viewing of linked-to material, those cases are either factually inapposite, or are district court decisions at odds with the appellate authority cited by Happy Mutant in that very same paragraph (i.e., *Perfect 10* and *Flava Works.*)—appellate authority that confirms that secondary liability can indeed lie for linking to infringing content.

Finally, Happy Mutant and the EFF may attempt to argue that *Perfect 10* was wrong and should be changed, but there argument in that regard is weak. From the perspective of the viewer, there is no real difference between Boing Boing directly uploading and copying the infringing content or linking to it—either way the viewer sees the link to the content, clicks on it, and is connected to it. Neither the Copyright Act nor the courts interpreting it could have intended that a website can intentionally promote infringing content for profit so long as their links only go to third party sites. There is simply no public policy justification for such a loophole.

Happy Mutants is wrong that Plaintiff must plead specific facts demonstrating further infringement—the controlling authorities and relevant policy considerations compel a rejection of that argument. Therefore, this Court should find that Plaintiff's claims are well pled and this motion should be denied.

### D. Boing Boing's fair use arguments cannot defeat Playboy's infringement claim at the pleading stage.

Defendant's fair use arguments are extremely weak, and are particularly inappropriate at the motion to dismiss stage. A motion to dismiss under Rule 12(b)(6) cannot be granted based on an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

While in rare instances an assertion of fair use may be decided on a motion to dismiss, it is generally a mixed question of fact and law that is not properly addressed at the pleading stage. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008). In this case, Playboy's complaint contains substantial factual allegations that cut against a finding of fair use under the four factors identified in 17 U.S.C. § 107(1)-(4).

The first statutory factor to determine in evaluating fair use is the purpose and character of the use. Happy Mutant's stated use—both in the offending post (FAC ¶ 14) and in its motion—is to show "how our standards of hotness, and the art of commercial erotic photography, have changed over time." But this is precisely in line with the purpose and character of Playboy's magazine—it features photographs in its magazines and special publications (such as the publication including *Playboy: The Compete Centerfolds, 1953-2016*) to show how our standards of hotness, and the art of commercial erotic photography, have changed over time.

The second factor, the nature of copyrighted work, similarly cuts against a finding of fair use. The copyrighted work is not a single image, but an entire catalog of highly artistic images. Indeed, in an implicit acknowledgement that this factor cuts against a finding of fair use Happy Mutant attempts to downplay this factor as "of limited usefulness."

Factor three, the amount and substantiality of portion of the original work used, cuts strongly against a finding of fair use. To the extent that Playboy's images could arguably be used fairly in demonstrating "how our standards of hotness, and the art of commercial erotic photography, have changed over time," it is clear that every Playboy Playmate ever need not be reproduced. Had only representative images from each decade, or perhaps even each year, been taken, this would be a very different case—but Happy Mutants cannot dispute that it knew it was linking to

an illegal library of "Every Playboy Playmate Centerfold Ever" since that is what it titled its blog post.

Similarly, the final factor—the effect on the value of or market for the copyrighted work—weighs heavily against a finding of fair use. As noted in Playboy's complaint, it continues to monetize its historic archive of Playmate centerfold images through sales of books, magazines and other publications (including *Playboy: The Compete Centerfolds, 1953-2016*), DVDs and other recorded video formats, and on the subscription website PlayboyPlus.com. Given that people are generally not going to pay for what is freely available, it is disingenuous of Happy Mutant to claim that promoting the free availability of infringing archives of Playboy's work for viewing and downloading is not going to have an adverse effect on the value or market of that work.

Happy Mutant's fair use arguments fail.

**E.  In the event Playboy's claims are deemed deficient, leave to amend should be granted. In the alternative, dismissal should be without prejudice and as to Happy Mutant only.**

"Leave to amend 'shall be freely given when justice so requires,' … and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), quoting Fed. R. Civ. P. 15(a)(2).

While Playboy believes its claim against Happy Mutants to be well pled, it respectfully requests the opportunity to amend its pleading should the Court find some deficiency.

Anticipating this, Happy Mutants argues that leave to amend should be denied since it does not believe Playboy can allege that some of its viewers visited and downloaded the infringing materials. Setting aside the fact that there is no such pleading requirement (see infra), this is certainly information that could be obtained through discovery. Specifically, subpoenas to Imgur and YouTube—which Playboy

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
14

will be seeking leave of this Court to serve promptly—will allow Playboy to not only determine the identity of the offending posters, but to determine the extent to which third parties downloaded the infringing content (and permit Playboy to identify them as well so that they may also be added to this case as additional defendants), and provide Playboy will the opportunity to determine whether Happy Mutant's promotion of the infringing posts resulted in any downloads by its viewers—at which point Playboy will have further facts supporting its claims.

The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Prior to the hearing date of this motion, Playboy will seek such leave.

Not only would it be unjust to grant Happy Mutants's motion without permitting Playboy an opportunity to conduct necessary discovery on third parties, it would embolden those operating online to support and promote sites that harbor infringing content.

In the event that the Court disagrees with Playboy and believes that dismissal without leave to amend is prejudice, Playboy respectfully requests that said dismissal be (1) as to Happy Mutants only so that Playboy can take the appropriate steps to uncover the identities of the underlying infringers, and (2) without prejudice so that Playboy may still hold Happy Mutants accountable for its actions if and when it is able to unearth the necessary additional facts.

///

///

### III. THIS MOTION MUST BE DENIED

Playboy's infringement claim against Happy Mutant is well grounded under *Perfect 10* and well pled factually. To the extent that additional facts must be pled, Plaintiff respectfully requests leave to amend, or in the alternative dismissal without prejudice. The current allegations, however, are sufficient and this motion should be denied.

Respectfully submitted,

Dated: January 25, 2018     By:   */s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
Howard S. Han, Esq.
DONIGER /BURROUGHS
Attorneys for Plaintiff