1  DURIE TANGRI LLP
   MARK A. LEMLEY (SBN 155830)
2  mlemley@durietangri.com
   JOSEPH C. GRATZ (SBN 240676)
3  jgratz@durietangri.com
   217 Leidesdorff Street
4  San Francisco, CA  94111
   Telephone:  415-362-6666
5  Facsimile:    415-236-6300

6  ELECTRONIC FRONTIER FOUNDATION
   CORYNNE MCSHERRY (SBN 221504)
7  corynne@eff.org
   DANIEL NAZER (SBN 257380)
8  daniel@eff.org
   815 Eddy Street
9  San Francisco, CA 94109
   Telephone:  415-436-9333
10
   Attorneys for Defendant
11 HAPPY MUTANTS, LLC

12                IN THE UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14               WESTERN DIVISION – LOS ANGELES

15
   PLAYBOY ENTERTAINMENT GROUP          Case No. 2:17-cv-08140-FMO (PLA)
16 INC., a Delaware Corporation,
                                        **DEFENDANT HAPPY MUTANTS**
17                   Plaintiff,          **LLC'S REPLY IN SUPPORT OF ITS**
                                        **MOTION TO DISMISS PLAINTIFF**
18      v.                              **PLAYBOY ENTERTAINMENT**
                                        **GROUP INC.'S FIRST AMENDED**
19 HAPPY MUTANTS, LLC, a Delaware       **COMPLAINT**
20 limited liability company, and DOES 1
   through 10,                          Date:  February 15, 2018
21                                      Time:  10:00 a.m.
                     Defendants.        Ctrm:  6D, W. 1st Street Courthouse
22                                      Judge: Honorable Fernando M. Olguin

23

24

25

26

27

28

_____
DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  ARGUMENT ........................................................................................... 2

   A.   Nothing Boing Boing did caused or resulted in any direct
        infringement. .............................................................................. 3

        1.   Inducement liability requires causation. ............................. 3

        2.   Material-contribution liability requires causation. ............ 7

   B.   *Perfect 10 v. Amazon.com* does not weigh against dismissal. ....... 7

        1.   With respect to inducement, *Perfect 10 v. Amazon.com* held that
             there was no viable inducement theory on its facts. ............ 8

        2.   With respect to material contribution, *Perfect 10 v. Amazon.com*
             is distinguishable here. ........................................................ 8

   C.   The link in question has substantial non-infringing uses. ........... 10

   D.   The First Amended Complaint pleads facts sufficient to find that
        Boing Boing engaged in fair use by linking to the third-party album for
        purposes of criticism and comment. .............................................. 12

        1.   Fair use may be considered at the pleadings stage. ........... 12

        2.   Boing Boing did not upload or host the centerfolds, and the fair
             use analysis should not proceed as though it had. ............. 13

   E.   Dismissal should be with prejudice as to Boing Boing. ............... 16

III. CONCLUSION ....................................................................................... 17

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjmi v. DLT Entm't Ltd.*,
14 Civ. 568(LAP), 2015 WL 1499575 (S.D.N.Y. Mar. 31, 2015) ................................ 13

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) .................................................................................................. 6

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) ..................................................................................... 15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
No. 16-1972, 2018 WL 650316 (4th Cir. Feb. 1, 2018) ...................................... 10, 12

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
737 F.3d 932 (4th Cir. 2013) .................................................................................... 15

*Calkins v. Playboy Enters. Int'l, Inc.*,
561 F. Supp. 2d 1136 (E.D. Cal. 2008) .................................................................... 14

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ................................................................................................. 14

*China Cent. Television v. Create New Tech. (HK) Ltd.*,
No. CV 15-01869 MMM, 2015 WL 3649187 (C.D. Cal. June 11, 2015) ...................... 4

*City of Inglewood v. Teixeira*,
No. CV-15-01815 MWF, 2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) ............. 12, 14

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .................................................................................... 4

*Ellison v. Hawthorne*,
548 F. App'x 371 (9th Cir. 2013) ............................................................................... 7

*Flava Works, Inc. v. Gunter*,
689 F.3d 754 (7th Cir. 2012) .................................................................................... 15

*Golan v. Holder*,
565 U.S. 302 (2012) ................................................................................................. 15

*Houghton Mifflin Co. v. Noram Pub. Co.*,
 28 F. Supp. 676 (S.D.N.Y. 1939) ................................................................. 6

*Lopez v. Smith*,
 203 F.3d 1122 (9th Cir. 2000) ................................................................. 17

*Luvdarts, LLC v. AT&T Mobility, LLC*,
 710 F.3d 1068 (9th Cir. 2013) ................................................................. 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005)..................................................................*passim*

*Online Policy Group v. Diebold, Inc.*,
 337 F. Supp. 2d 1195 (N.D. Cal. 2004)..................................................... 13, 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007) ................................................................*passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
 494 F.3d 788 (9th Cir. 2007) ................................................................. 10

*Perfect 10 v. Giganews, Inc.*,
 847 F.3d 657 (9th Cir.), *cert. denied*, 138 S. Ct. 504 (2017) ....................................... 10

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*,
 907 F. Supp. 1361 (N.D. Cal. 1995)........................................................... 13

*Reno v. American Civil Liberties Union*,
 521 U.S. 844 (1997)........................................................................... 1

*Savage v. Council on American-Islamic Relations, Inc.*,
 No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008)................................ 13

*Sega Enters. Ltd. v. MAPHIA*,
 948 F. Supp. 923 (N.D. Cal. 1996)........................................................... 13

*Seltzer v. Green Day, Inc.*,
 725 F.3d 1170 (9th Cir. 2013) ................................................................. 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984)........................................................................... 11

*Stern v. Does*,
 978 F. Supp. 2d 1031 (C.D. Cal. 2011) ....................................................... 13

*Tarantino v. Gawker Media, LLC*,
　　No. CV 14-603-JFW, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) .................. 2, 8, 10

**Statutes**

17 U.S.C. § 512(h)(1) ........................................................................................... 16

**Other Authorities**

Anthony O. Miller, *Court Halted Dime Edition of 'Mein Kampf': Cranston
　　Tells How Hitler Sued Him and Won*, L.A. Times (Feb. 14, 1988), *at*
　　http://articles.latimes.com/1988-02-14/news/mn-42699_1_mein-kampf ...................... 6

https://scholar.google.com/scholar?hl=en&as_sdt=0%2C5&q=boingboing.ne
　　t&btnG= ..................................................................................................... 2

Jason Horowitz, *In Interview, Donald Trump Denies Report of Father's
　　Arrest in 1927*, N.Y. Times: FirstDraft (Sept. 22, 2015),
　　https://www.nytimes.com/politics/first-draft/2015/09/22/in-interview-
　　donald-trump-denies-report-of-fathers-arrest-in-1927/ .................................. 2

Nicholas Riccardi, *Airport's Free Wireless Service Comes at a Price*, L.A.
　　Times (Mar. 10, 2008), http://www.latimes.com/travel/la-trw-
　　wifi10mar10-story.html .................................................................. 2

1

## I.    INTRODUCTION

2        Playboy claims this is an important case.  It is partially correct:  if the Court allows

3   this case to go forward, it will send a dangerous message to everyone engaged in ordinary

4   online commentary.  Links do exactly what you might expect:  they connect the reader to

5   a piece of material that a second person wants to comment on or simply call to attention.

6   As part of the original design of the Internet hypertext medium, linking dramatically

7   enhances users' ability to acquire and share information and ideas.  It is an essential form

8   of Internet communication.  As the Supreme Court explained in *Reno v. American Civil*

9   *Liberties Union*, 521 U.S. 844 (1997), the Internet democratizes access to speech by

10  allowing every user to speak to—and be heard by—every other connected user:

11              Through the use of chat rooms, any person with a phone line can

12              become a town crier with a voice that resonates farther than it

13              could from any soapbox.  Through the use of Web pages, mail

14              exploders, and newsgroups, the same individual can become a

15              pamphleteer.

16  *Id.* at 870.  Links to primary source materials posted by third parties can make those

17  "pamphlets" much more powerful because they let the reader form his or her own opinion

18  about the author's commentary.  Playboy, however, would apparently prefer a world in

19  which the "pamphleteer" must ask for permission before linking to primary sources, on

20  pain of expensive litigation.

21       If this case goes forward and Playboy succeeds, it could create that world.  Playboy

22  seeks to use this case to upend more than a decade of law and the settled expectations of

23  the online community.  Indeed, it need not actually win the case to accomplish that goal.

24  This case merely has to survive a motion to dismiss to launch a thousand more expensive

25  lawsuits, chilling a broad variety of lawful expression and reporting that merely adopts the

26  common practice of linking to the material that is the subject of the report.

27       But this case should not go forward—at least as to Boing Boing, a well-established

28  source of news and commentary that has been cited more than 2,300 times in peer-

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

reviewed scholarly research,[1] as well as numerous other publications such as the *Los Angeles Times* (which once called Boing Boing "by many measures the most-read blog on the Internet")[2] and the *New York Times* (which credited Boing Boing for breaking the news that then-candidate Donald Trump's father had been arrested at a Ku Klux Klan rally in 1927).[3]  Settled precedent requires dismissal, both because Boing Boing did not induce or materially contribute to any copyright infringement and, in the alternative, because Boing Boing engaged in fair use.

As a matter of law, not to mention sound policy, the Court should follow established precedent in this Circuit, and Judge Walter's sound analysis in the virtually identical *Tarantino* case, and dismiss this case with prejudice.

## II.    ARGUMENT

In the Opposition, Playboy has clarified its theory of liability:  Playboy asserts that Boing Boing is liable for its "manifestation of support or appreciation for an existing infringement," Opp'n at 8 n.9, ECF No. 22-1, and that "Playboy has identified the underlying act of direct infringement—the unauthorized posting of Playboy's work on Imgur and YouTube by the third parties Happy Mutant subsequently celebrated and encouraged."  *Id.* at 9.  There are four fatal problems with this theory.  The first, discussed in Part II-A below, is that nothing Boing Boing did caused or resulted in "the unauthorized posting of Playboy's work on Imgur and YouTube."  *Id.*  The second, discussed in Part II-B below, is that it is unsupported by the *Perfect 10 v. Amazon.com* case on which Playboy relies—since that case dealt with copying, rather than mere

---

[1] https://scholar.google.com/scholar?hl=en&as_sdt=0%2C5&q=boingboing.net&btnG=

[2] Nicholas Riccardi, *Airport's Free Wireless Service Comes at a Price*, L.A. Times (Mar. 10, 2008), http://www.latimes.com/travel/la-trw-wifi10mar10-story.html

[3] Jason Horowitz, *In Interview, Donald Trump Denies Report of Father's Arrest in 1927*, N.Y. Times: FirstDraft (Sept. 22, 2015), https://www.nytimes.com/politics/first-draft/2015/09/22/in-interview-donald-trump-denies-report-of-fathers-arrest-in-1927/

viewing.  The third, discussed in Part II-C below, is that the link at issue had substantial non-infringing uses, and thus its distribution does not support liability on a material-contribution theory.  The fourth, discussed in Part II-D, is that Boing Boing's conduct in drafting its post and linking to the third-party materials accused of infringement constituted fair use, since it was for purposes of criticism, commentary, and news reporting.  As discussed in Part II-E below, these four fatal problems cannot be cured by amendment, and mean that dismissal should be with prejudice as to Boing Boing.

### A.   Nothing Boing Boing did caused or resulted in any direct infringement.

In the Motion, Boing Boing argued that Playboy had not identified any act of direct infringement that Boing Boing was alleged to have induced or to which Boing Boing was alleged to have materially contributed.  Playboy concedes that Boing Boing "visitors do not commit an act of direct infringement by merely viewing the linked-to content."  Opp'n at 11, ECF No. 22-1.  Instead, Playboy argues that "Playboy has identified the underlying act of direct infringement—the unauthorized posting of Playboy's work on Imgur and YouTube by the third parties Happy Mutant **subsequently** celebrated and encouraged." *Id.* at 9 (emphasis added).  The question is now crisply teed up:  can a party be liable for copyright infringement on an inducement or material-contribution theory if all of their relevant actions took place **subsequent to** the underlying act of direct infringement?  As discussed below, the answer is "no" as a matter of law.

### 1.   Inducement liability requires causation.

The Supreme Court announced the test for inducement liability in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*:  "We hold that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for **the resulting** acts of infringement by third parties."  545 U.S. 913, 919 (2005) (emphasis added).  In order for there to have been "resulting" acts of underlying direct infringement by third parties, there must be a causal chain leading from an action by the defendant to that underlying infringement.  That is why the Ninth Circuit, in discussing the *Grokster* inducement

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

liability standard, held that it includes "causation" as one of its "four elements." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013).[4]

That "causation" element, as discussed by the Ninth Circuit, is causation "in a 'but-for' sense," and requires that a plaintiff "show a sufficient causal connection between" the underlying direct infringement and the activities of the defendant. *Id.* at 1038, 1039. The question, according to the Ninth Circuit, is "the degree to which [the defendant] can be held liable for **having caused infringements** by [third-party direct infringers]." *Id.* at 1039 (emphasis added). This formulation has been applied by district courts in assessing the causation element of inducement liability. *See, e.g.*, *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV 15-01869 MMM (MRWx), 2015 WL 3649187, at *10 (C.D. Cal. June 11, 2015) (finding the causation element met where "defendants are the but-for cause of [the direct] infringement").

Playboy argues that, in the context of inducement liability, "'causation' does not mean causing further infringement." Opp'n at 8 n.9, ECF No. 22-1. "Rather," Playboy argues, "it refers to either inducing or encouraging further infringement (the second of which does not necessarily cause any new infringement, but may simply cause a manifestation of support or appreciation for an existing infringement)." *Id.* This view reads the causation element out entirely, and finds no support in any of the inducement case law.

Playboy seizes on the statement in *Grokster* that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," 545 U.S. at 930, in support of its argument that inducement liability can be supported by a showing of after-the-fact

---

[4] We focus on the causation element because the facts pleaded in the First Amended Complaint ("FAC") make clear that there was no causal connection between anything Boing Boing did and the direct infringement at issue. This is not to say that we concede the presence of the other three elements—only that causation is the element that most cleanly resolves this claim at the pleadings stage, based on the allegations of the FAC.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

appreciation rather than a showing of inducement.  But *Grokster* does not stand for that proposition.  The word "encouraging" in that sentence does not refer to after-the-fact appreciation, but instead to before-the-fact encouragement of later direct infringement. Indeed, the Supreme Court specifically discussed what it meant by "encouraging" in this context:

> Evidence of "active steps ... taken to **encourage** direct infringement," *Oak Industries, Inc. v. Zenith Electronics Corp.,* 697 F.Supp. 988, 992 (N.D.Ill.1988), such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use, see, *e.g., Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (C.A.Fed.1988) (liability for inducement where one "actively and knowingly aid [s] and abet[s] another's direct infringement" (emphasis deleted)); *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 412–413 (C.A.5 1963) (demonstrations by sales staff of infringing uses supported liability for inducement); *Haworth Inc. v. Herman Miller Inc.,* 37 U.S.P.Q.2d 1080, 1090, 1994 WL 875931 (W.D. Mich. 1994) (evidence that defendant "demonstrate[d] and recommend[ed] infringing configurations" of its product could support inducement liability); *Sims v. Mack Trucks, Inc.,* 459 F.Supp. 1198, 1215 (E.D. Pa. 1978) (finding inducement where the use "depicted by the defendant in its promotional film and brochures infringes the ... patent"), *overruled on other grounds*, 608 F.2d 87 (C.A.3 1979).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

*Grokster*, 545 U.S. at 936 (emphasis added).  Each of these examples—taken by the Supreme Court from patent law—reflects more than after-the-fact appreciation for an earlier act of direct infringement; instead, they reflect before-the-fact **encouragement** of further infringement in the future.

Playboy's "appreciation of infringement" theory would produce remarkable, even outrageous results.  Saying "I'm glad Alan Cranston infringed the copyright in *Mein Kampf* to warn us about Hitler" would now be an act of retroactive copyright infringement.[5]  Indeed, if Playboy were correct, and the mere "manifestation of support or appreciation for an existing infringement" could give rise to liability, Opp'n at 8 n.9, ECF No. 22-1, such an application would run afoul of the First Amendment.  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The government may suppress speech for advocating the use of force or a violation of law only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'") (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam)); *id.* ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.").

Here, the only relationship alleged between "the underlying act of direct infringement—the unauthorized posting of Playboy's work on Imgur and YouTube"—and Boing Boing is the allegation that, after that act of direct infringement had already occurred, Boing Boing "subsequently celebrated and encouraged" that past act through a

---

[5] Cranston—then a journalist, later a United States Senator—prepared an unauthorized translation of portions of *Mein Kampf* after finding that the translation licensed by Hitler's German publisher left out those portions, which showed Hitler's plan for the world.  Anthony O. Miller, *Court Halted Dime Edition of 'Mein Kampf': Cranston Tells How Hitler Sued Him and Won*, L.A. Times (Feb. 14, 1988), *at* http://articles.latimes.com/1988-02-14/news/mn-42699_1_mein-kampf.  Cranston's publication was found to infringe Hitler's copyright and was enjoined.  *Houghton Mifflin Co. v. Noram Pub. Co.*, 28 F. Supp. 676, 677 (S.D.N.Y. 1939).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

"manifestation of support or appreciation for [that] existing infringement."  Opp'n at 9, 8 n.9, ECF No. 22-1.  Boing Boing's later act cannot have caused those earlier acts of unauthorized posting.  "Causation does not run backwards in time."  *Ellison v. Hawthorne*, 548 F. App'x 371, 374 (9th Cir. 2013).  And so even if Boing Boing's post was a "manifestation of support or appreciation for an existing infringement," Opp'n at 8 n.9, ECF No. 22-1, it cannot give rise to inducement liability.

### 2. Material-contribution liability requires causation.

The result is no different under the material-contribution theory of liability.  As with inducement, a material-contribution claim requires a showing of causation between the defendant's actions and a third party's direct infringement.  The Ninth Circuit's formulation of the material-contribution test in *Perfect 10 v. Amazon.com* makes this clear:  "an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to **result** in such direct infringement."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (emphasis added).[6]  Obviously, steps can only "result" in a third party's direct infringement if those steps are a before-the-fact cause of that direct infringement.  There is no such allegation here, because "the underlying act of direct infringement—the unauthorized posting of Playboy's work on Imgur and YouTube"—cannot be the result of later actions by Boing Boing.

### B. *Perfect 10 v. Amazon.com* does not weigh against dismissal.

The Ninth Circuit's decision to remand in *Perfect 10 v. Amazon.com* does not save

---

[6] We know that the Ninth Circuit is referring to material-contribution liability when it says "intentionally encouraging direct infringement" because, earlier in the same paragraph, the court held that "Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted the use of its search engine specifically to infringe copyrights."  508 F.3d at 1171 n.11.  With the inducement theory thus off the table, the discussion of "intentionally encouraging" can refer only to the material-contribution theory.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

Playboy's secondary liability theory.  In essence, Playboy argues that if linking couldn't lead to liability, the Ninth Circuit would not have needed to remand the contributory-liability claim for further proceedings and therefore Playboy's linking claim should also survive.  But as discussed below, while both Playboy and Perfect 10 brought claims based on linking to photographs of nude women, with respect to secondary liability that is where the similarities end.

The best guidance, by contrast, may be found just one floor up:  Judge Walter's opinion in *Tarantino v. Gawker Media, LLC*, No. CV 14-603-JFW (FFMx), 2014 WL 2434647, at *4 (C.D. Cal. Apr. 22, 2014).  Notably, Playboy does not attempt to distinguish that opinion.  Instead, Playboy simply states that the result there is "inconsistent with the holding of *Perfect 10*."  Opp'n at 10 n.10, ECF No. 22-1.  But there is no conflict between dismissal in *Tarantino* and the result in the *Perfect 10* case—since *Tarantino* is different from *Perfect 10* in all the ways that this case is different from *Perfect 10*, as discussed below.

### 1. With respect to inducement, *Perfect 10 v. Amazon.com* held that there was no viable inducement theory on its facts.

*Perfect 10* does not tell us anything about inducement liability (as opposed to material-contribution liability), because the *Perfect 10* panel was not addressing inducement liability in its analysis.  The *Perfect 10* court stated, in a footnote, that "Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted the use of its search engine specifically to infringe copyrights." 508 F.3d at 1171 n.11.  So *Perfect 10* sheds no light on inducement liability.

### 2. With respect to material contribution, *Perfect 10 v. Amazon.com* is distinguishable here.

The key distinction drawn in *Tarantino* was that the blogger was encouraging readers to click on a link to view allegedly infringing material—not to download that material.  The same is, of course, true here.  By contrast, in *Perfect 10*, the court made repeated reference not just to displaying or viewing, but to three terms that, as the *Perfect*

8

1  *10* court explained, can refer only to **downloading**, and not merely to viewing:

2  "distributing" and "reproducing" "copies."  *See, e.g.*, *Perfect 10*, 508 F.3d at 1169 ("First,

3  Perfect 10 claims that third-party websites directly infringed its copyright by

4  **reproducing**, displaying, and **distributing** unauthorized **copies** of Perfect 10's images."),

5  *id.* at 1170 ("Therefore, we must assess Perfect 10's arguments that Google is secondarily

6  liable in light of the direct infringement that is undisputed by the parties:  third-party

7  websites' **reproducing**, displaying, and **distributing** unauthorized **copies** of Perfect 10's

8  images on the Internet."), *id.* at 1172 ("There is no dispute that Google substantially

9  assists websites to **distribute** their infringing **copies** to a worldwide market and assists a

10  worldwide audience of users to access infringing materials."), *id.* at 1174 ("By contrast,

11  Google cannot stop any of the third-party websites from **reproducing**, displaying, and

12  **distributing** unauthorized **copies** of Perfect 10's images because that infringing conduct

13  takes place on the third-party websites."), *id.* at 1175 ("Google's failure to change its

14  operations to avoid assisting websites to **distribute** their infringing content may constitute

15  contributory liability, *see supra* Section IV.A.") (emphases added).

16      The *Perfect 10* court explained that the Copyright Act grants the exclusive right "to

17  distribute copies or phonorecords of the copyrighted work to the public by sale or other

18  transfer of ownership, or by rental, lease, or lending.  17 U.S.C. § 106(3)."  508 F.3d at

19  1162.  It also grants the exclusive right "to reproduce the copyrighted work in copies or

20  phonorecords."  *Id.* at 1159 n.5 (quoting 17 U.S.C. § 106(1)).  "Copies" means "material

21  objects . . . in which a work is fixed . . . ."  *Id.* at 1160 (quoting 17 U.S.C. § 101).  Relying

22  on these statutory definitions, the *Perfect 10* panel held that "in the electronic context," a

23  web user can "obtain copies by downloading the photo or printing it."  *Id.* at 1162.  Thus,

24  when the *Perfect 10* panel makes reference to "distribution," it means more than simply

25  viewing the photo; instead, it means downloading or printing a copy of the photo, which

26  (unlike mere viewing) may itself constitute direct infringement.

27      The same is true of the cases citing *Perfect 10 v. Amazon.com* on which Playboy

28  relies:  those cases were careful to characterize the *Perfect 10 v. Amazon.com* holding as

1   one dealing with **distribution** of copies (that is, downloading or printing), rather than
2   dealing with a material contribution to later viewing.  *See Perfect 10, Inc. v. Visa Int'l*
3   *Serv. Ass'n*, 494 F.3d 788, 796, 797 (9th Cir. 2007) ("the services provided by the credit
4   card companies do not help locate and are not used to **distribute** the infringing images"
5   while "Google's search engine itself assists in the **distribution** of infringing content to
6   internet users") (emphases added).  And it also distinguishes Playboy's other cited case,
7   *Perfect 10 v. Giganews, Inc*., 847 F.3d 657, 669 (9th Cir.), *cert. denied*, 138 S. Ct. 504
8   (2017) (emphasis added), in which "users uploaded infringing content **onto Giganews**
9   **servers**," thereby engaging in an act of reproduction that involved the servers of the
10  defendant.

11        The *Perfect 10* court did not address situations like the one here (and the one in
12  *Tarantino*), where the act being encouraged is not a potentially infringing act of
13  downloading or printing a copy, but instead merely viewing the linked-to content.  And,
14  as Playboy agrees, "visitors do not commit an act of direct infringement by merely
15  viewing the linked-to content."  Opp'n at 11, ECF No. 22-1.  Thus, Playboy is wrong
16  when it says that *Tarantino* "and *Perfect 10* cannot both be correct."  *Id.* at 10 n.10.  Judge
17  Walter's carefully-reasoned opinion is entirely consistent with—and, indeed, cites—the
18  Ninth Circuit's opinion in *Perfect 10*.  There, as here, encouraging users merely to view
19  linked-to content does not give rise to contributory copyright infringement liability.

20        **C.    The link in question has substantial non-infringing uses.**

21        On pages 7 and 8 of its Opposition, Playboy discusses the "substantial non-
22  infringing use" doctrine, which holds that no intent to aid infringement may be imputed
23  from the defendant's provision of an instrumentality that aided a third party's direct
24  infringement, where that instrumentality has "substantial lawful as well as unlawful uses."
25  *Grokster*, 545 U.S. at 933; *see BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc*., No.
26  16-1972, 2018 WL 650316, at *12 (4th Cir. Feb. 1, 2018) ("Selling a product with both
27  lawful and unlawful uses suggests an intent to cause infringement only if the seller knows
28  of *specific* instances of infringement, but not if the seller only *generally* knows of

infringement.").[7]  Playboy agrees that what it calls the "offending link" is an instrumentality provided by Boing Boing that constituted the alleged material contribution to a third party's direct infringement—but argues that the link "does nothing more than support infringing content" and "is good for nothing but promoting infringement," and therefore has no substantial non-infringing use.  Opp'n at 7, ECF No. 22-1.  But those facts are not only absent from the FAC, they are contradicted by it.  As is evident from the post reproduced in the FAC itself, the link has at least one large, glaring non-infringing use:  for a visitor to click on it and view (and not download or print) the images posted by a third party on Imgur.  Playboy agrees that "visitors do not commit an act of direct infringement by merely viewing the linked-to content."  *Id.* at 11.  Thus, merely viewing the linked-to content is a substantial non-infringing use of the link.

And the context for the link provides a further non-infringing use:  fair use by the viewer (as opposed to fair use by Boing Boing, discussed below).  Consumer fair use of copyrighted materials, aided by an instrumentality provided by the defendant, was precisely the scenario in *Sony*, the case in which the Supreme Court first announced the substantial non-infringing use doctrine.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 455-56 (1984) (because "home time-shifting is fair use," the Betamax was "capable of substantial noninfringing uses").  Boing Boing visitors engaged in fair use when they clicked on the link to "see how our standards of hotness, and the art of commercial erotic photography, have changed over time."  FAC ¶ 14.

Thus, even to the extent it is possible that some Boing Boing reader managed to

_____

[7] Curiously, Playboy situates that discussion in its section on its inducement theory of liability—but the substantial non-infringing use doctrine does not limit claims on an inducement theory, only (as Boing Boing stated) where a defendant is accused of "making a material contribution to" a third party's direct infringement.  Mot. at 11; *see Grokster*, 545 U.S. at 935 ("*Sony*'s staple-article rule will not preclude liability" where the defendant has induced infringement through "statements or actions directed to promoting infringement").

infringe copyright—by, for example, downloading (rather than viewing) the centerfolds for purposes of aesthetic enjoyment (rather than to "see how our standards of hotness, and the art of commercial erotic photography, have changed over time")—Boing Boing's link nonetheless had at least substantial (and indeed overwhelming) non-infringing uses.  And there is certainly no allegation, nor any basis for an allegation, that Boing Boing had actual knowledge that a particular such reader was engaged in such infringement—and, further, no allegation that Boing Boing chose to continue providing the link to such a person "with the *knowledge* that the [particular reader] *will in fact* use the [link] to infringe copyrights."  *BMG Rights Mgmt. (US) LLC*, 2018 WL 650316, at \*9. Accordingly, providing the link does not give rise to an inference or imputation of the "intent to bring about infringement" necessary for a finding of contributory infringement. *See Grokster*, 545 U.S. at 940.  Because the provision of the link is the only fact pleaded in the FAC to support that necessary element of Playboy's cause of action, this provides an independent ground for dismissal of the FAC.

### D.   The First Amended Complaint pleads facts sufficient to find that Boing Boing engaged in fair use by linking to the third-party album for purposes of criticism and comment.

Playboy's response on fair use fails for two reasons.  *First*, it disregards settled authority that fair use can be decided on a motion to dismiss.  *Second*, to the extent Playboy's arguments have any merit, they are misdirected.  Playboy confusingly analyzes the fair use factors—such as the portion of work used—as if Boing Boing had uploaded and hosted the centerfolds.  But it is uncontested that Boing Boing did not upload the works.  Rather, it commented on the works and linked to a third-party site.

### 1.   Fair use may be considered at the pleadings stage.

Courts have repeatedly held that fair use may be considered on a motion to dismiss. *See City of Inglewood v. Teixeira*, No. CV-15-01815 MWF (MRWx), 2015 WL 5025839, at \*7 (C.D. Cal. Aug. 20, 2015) ("where appropriate a court may consider a fair use defense on a motion to dismiss").  Rulings on fair use at the pleading stage are common and are appropriate in cases, such as this one, where the relevant facts appear on the face

12

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

of the pleadings and are not in dispute. *See Adjmi v. DLT Entm't Ltd.*, 14 Civ. 568(LAP), 2015 WL 1499575, at *13 (S.D.N.Y. Mar. 31, 2015); *Stern v. Does*, 978 F. Supp. 2d 1031, 1051 (C.D. Cal. 2011) (deciding case on summary judgment while noting that it could "easily could have been resolved on a motion to dismiss"); *Savage v. Council on American-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *9 (N.D. Cal. July 25, 2008) (granting a motion for judgment on the pleadings based on fair use).

## 2. Boing Boing did not upload or host the centerfolds, and the fair use analysis should not proceed as though it had.

Rather than raise disputed facts that might overcome a fair use defense, Playboy misleadingly argues as if Boing Boing had uploaded and hosted the infringing works itself. *See* Opp'n at 13, ECF No. 22-1 (arguing that "it is clear that every Playboy Playmate ever need not be reproduced."). But when considering a fair use defense to a claim for secondary liability, courts consider whether the actions of the *defendant* themselves constitute fair use, separately from the question whether the underlying third-party acts alleged to constitute direct infringement are instead fair use. For example, in the influential early Internet copyright case, *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995), the court considered a fair use defense to a contributory infringement claim. The court wrote that the "proper focus here is on whether Netcom's [the alleged contributory infringer] actions qualify as fair use, not on whether Erlich [the direct infringer] himself engaged in fair use . . . ." *Id.* at 1378. *See also Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 934 (N.D. Cal. 1996) (finding that a bulletin board operator "may . . . avoid liability if his contributing actions qualify as fair use").

Once the actions of Boing Boing, and not the uploader, are considered, it becomes clear that the post at issue is a fair use. On factor one, the text of the blog post reproduced in the FAC establishes that Boing Boing engaged in the transformative purpose of journalistic commentary. In *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1198 (N.D. Cal. 2004), the court considered whether the publisher of an article engaged in

13

copyright infringement by linking to an email archive.  The court concluded that when the "on-line newspaper, IndyMedia, published an article criticizing Diebold's electronic voting machines and containing a hyperlink to the email archive" the "use was transformative."  *Id.* at 1198, 1203.

In an attempt to rebut this straightforward conclusion, Playboy suggests that Boing Boing's commentary on the centerfolds was not transformative because Playboy itself engaged in some similar commentary at some point.  *See* Opp'n at 13, ECF No. 22-1.  But the fact that the copyright owner chose to engage in some commentary of its own (in a different work, many years after the publication of the original centerfolds) does not make the commentary of others non-transformative.[8]  Commentary is a transformative purpose at the heart of fair use.  *See City of Inglewood*, 2015 WL 5025839, at *8; *Calkins v. Playboy Enters. Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141 (E.D. Cal. 2008).  There is no requirement that a commentator *disagree* with the original author for the commentary to be transformative.  As the Ninth Circuit has noted, an "allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent."  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013).  This is true even where "the allegedly infringing work makes few physical changes to the original."  *Id.*  Boing Boing's reporting and commentary is a classic example of the transformative use protected by copyright's fair use doctrine.

With respect to factor two, Playboy apparently agrees that this factor is "of limited usefulness" in this case; at least, it does not contest it.  Opp'n at 13, ECF No. 22-1.  Indeed, it is well-settled that factor two is less consequential when a transformative use is being made of an already-published work.  *See Campbell v. Acuff-Rose Music, Inc.*, 510

---

[8] The absurdity of Playboy's argument can be illustrated with an example.  Suppose a movie studio commissioned a bad review of one of its own movies.  Would that then make any subsequent bad reviews from third-parties non-transformative and infringing? Of course not.  A copyright owner cannot preempt commentary on its works.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

U.S. 569, 586 (1994); *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 943 (4th Cir. 2013); *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 612 (2d Cir. 2006).

Regarding factor three, Playboy argues as though Boing Boing was the direct infringer. *See* Opp'n at 13, ECF No. 22-1. But it is uncontested that Boing Boing's post does not use Playboy's works on its own site. Rather, it comments on the works and links to an external site. Playboy's suggestion that Boing Boing should instead have taken representative images from each decade addresses a different case. Playboy's suggestion would require Boing Boing itself to copy a number of centerfolds. But Boing Boing did not do that precisely because it did not copy any photographs at all.

Finally, Playboy's factor-four argument relies on an allegation contrary to the undisputed content of the post at issue. As it does throughout its opposition, Playboy falsely portrays the post as urging readers to engage in "downloading" of the centerfolds. *Id.* at 14. This is an invention of Playboy's counsel. Nothing in the post, set forth in the FAC at paragraph 14, urges readers to click on the link and then take the further step of downloading the images. Moreover, to the extent Boing Boing's commentary led readers to click on the links and view the externally-hosted content, that did not further copyright infringement. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757-58 (7th Cir. 2012). Boing Boing did nothing to encourage the uploading of the images (which occurred *before* its post) and nothing to prevent Playboy from taking steps to have the images removed from Imgur or YouTube (which Playboy successfully did many months before this action was filed). To treat Boing Boing's commentary as a market substitute conflates its actions with the unnamed third parties alleged to have engaged in direct infringement.

As the Supreme Court has noted, fair use affords "considerable latitude for scholarship and comment" and is a "built-in" First Amendment accommodation for copyright. *Golan v. Holder*, 565 U.S. 302, 329 (2012) (citations omitted). Ending litigation involving fair uses at the pleading stage helps accomplish Section 107's purpose

15

of ensuring that there is adequate breathing space for new creative expression.  The facts pleaded in the FAC, properly considered, compel a finding that Boing Boing's commentary was fair use.

### E.  Dismissal should be with prejudice as to Boing Boing.

Finally, the Court should reject Playboy's request for leave to amend so it can embark on a fishing expedition for new facts.  Instead, it should dismiss Boing Boing from this case with prejudice.

As to Playboy's first approach (requesting leave to amend—again—after early discovery), Playboy has ample tools to discover whether anyone actually downloaded the allegedly infringing materials, without forcing Boing Boing to bear the burden of riding along.  They can proceed with their claims against the Doe defendants named in the FAC, and then seek to use that process to subpoena the relevant services.  Playboy may well have a cause of action against the third parties who uploaded the copyrighted materials to Imgur and YouTube, and nothing prevents them from pursuing that claim.  Dismissing Boing Boing with prejudice does not leave Playboy without a remedy; instead, it requires Playboy to pursue the parties who decided to upload Playboy's copyrighted works, rather than Boing Boing, who merely pointed out that those parties had done so.

What is more, Playboy could have long ago taken advantage of the procedures set forth under Section 512(h) of the Digital Millennium Copyright Act.  *See* 17 U.S.C. § 512(h)(1) ("A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.").  For whatever reason, it failed to do so.  Playboy should not be rewarded (and Boing Boing penalized) for its lack of diligent factual investigation.

As for Playboy's second approach (dismissal without prejudice), it too should be rejected because there is no set of facts that can actually save this case as to Boing Boing.  As explained above, Plaintiff's initial liability theory is fundamentally flawed, since Boing Boing did not aid any direct infringement.  And even if the prima facie contributory

16

infringement claim were viable, the post was a classic fair use and therefore noninfringing.  "Courts are not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming dismissal with prejudice of a claim of contributory copyright infringement at the pleadings stage).  Boing Boing should not bear the burden of being dragged back into court to make these same arguments again, no matter what facts Plaintiff unearths about the conduct that third parties chose to undertake.

Playboy had a chance to clean up its initial Complaint, and it presumably did its best to assert facts sufficient to state a claim in the FAC.  Instead, it offered facts that were more than sufficient to disprove its own case.  It should not get a third bite at the apple.

## III.   CONCLUSION

Linking to materials posted by third parties on the Internet so that others may view them does not, as a matter of law, support a claim for contributory copyright infringement—particularly where, as here, that link is made in the context of criticism and commentary on the materials being linked to.  All claims against Boing Boing in the First Amended Complaint should be dismissed with prejudice.

Dated:  February 1, 2018                         DURIE TANGRI LLP


                                         By: _____*/s/ Joseph C. Gratz*_____
                                                       JOSEPH C. GRATZ

                                             Attorneys for Defendant
                                             HAPPY MUTANTS, LLC

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 1, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Joseph C. Gratz*
_____
JOSEPH C. GRATZ

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT / CASE NO. 2:17-CV-08140-FMO-PLA